IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-01316-RPM-BNB

GOODWILL, KFT.,

Plaintiff,

v.

NEOPLAN USA CORPORATION,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

On September 23, 2004, a judgment was entered in favor of the plaintiff, Goodwill, Kft ("Goodwill"), and against the defendant, Neoplan USA Corporation ("Neoplan"), in the amount of $134,730, plus interest. The claims underlying the judgment asserted breach of contract and quantum meruit.

I.

In an attempt to collect its judgment, Goodwill served writs of garnishment on U.S. Bank and on the First National Bank of Lamar. In response to the writ served on it, U.S. Bank initially answered on November 8, 2004, that it held $141,528.80 owing to Neoplan and stated that U.S. Bank did not have any claim to or setoff against the property. U.S. Bank filed an amended answer to the writ of garnishment on November 15, 2004, however, indicating that it did not possess or control any property of Neoplan and stating that there were "[n]o attachable accounts--monies were held on an account that a third party has a lien on."

The First National Bank of Lamar answered that it held $105,110.71 in a checking account for the benefit of Neoplan, and noted further that there appeared to be a competing third party claim by BNY Asset Solutions LLC to the funds on deposit. Consequently, pursuant to Colo. R. Civ. P. 103 § 11(c)(1),[1] the First National Bank of Lamar deposited the $105,110.71 into the registry of the court on December 1, 2004.

On December 17, 2004, Goodwill filed its *Traverse of Amended Answer to Writ of Garnishment By U.S. Bank* [Doc. # 33, filed 12/17/04]. The Traverse states:

> U.S. Bank did not freeze or hold the funds subject to further direction by the court, nor did it pay the funds into the registry of the Court to permit the Court to adjudicate the rights of the parties in interest to the funds. Instead, U.S. Bank, upon the oral request of the alleged third-party lienor and without seeking leave from the Court to do so, released the funds back to the Judgment Debtor.

Traverse, ¶5.

The Traverse further argues, but without any evidentiary support, that even if Neoplan's general operating account at U.S. Bank was subject to a superior lien, "the analysis does not end there." Id., ¶7. According to Goodwill:

> U.S. Bank maintains several other accounts of Neoplan, so-called "sweep accounts." According to Ms. Marsh these other accounts are regularly "swept" into the General Operating Account in order to maintain "zero balances" in the sweep accounts.
> \* \* \*
> The Sixth Circuit has held that procedures similar to those followed by U.S. Bank violate the letter and intent of the law and places the

---

[1]Rule 103 § 11(c)(1) provides:

> If the answer states that the garnishee is informed of the claim of a third person, the garnishee may at any time pay to the clerk of the court any garnished amount payable at the time of the service of any writ provided for by this rule. . . .

2

>bank in the role of a litigant, instead of neutral stakeholder, in the proceedings. *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627 (6th Cir. 2000). In *McMahan*, the bank "swept" five of Po Folks' accounts into a general account at the end of each business day, leaving a "zero balance" in all but one account, which Po Folks perpetually kept overdrawn. The bank, when served with a Writ of Garnishment, rather than check the balance of each account at the date ***and time*** of service, would automatically check account balances as of the close of business the previous day, guaranteeing that there would never be monies available subject to the garnishment. The Court, in rejecting this procedure, stated that, "Fundamental fairness does not permit such a result. . . ." The Court stated that it was the bank's duty, when served with a Writ of Garnishment, to determine whether it possessed any property belonging to the Judgment Debtor "on the date *and time* a garnishment order was served."

Id., ¶¶7, 9. It is significant, however, that Goodwill has provided no evidence in support of its argument that U.S. Bank maintained sweep accounts for the benefit of Neoplan and no evidence of how those sweep accounts were operated.

BNY Asset Solutions, LLC ("BNY"), was allowed to intervene by an order entered on December 3, 2004. Thereafter, BNY filed its *Opposition of BNY Asset Solutions, LLC to Traverse of Garnishment and Motion for Release of Funds Deposited By First National Bank of Lamar* [Doc. # 36, filed 1/12/05] (the "BNY Motion for Funds"). BNY argues that it serves as an agent to certain of Neoplan's lenders (the "Lenders") which have made loans to Neoplan of more than $17 million. In connection with those loans, Neoplan granted the Lenders "a blanket security interest in all of Neoplan's assets, including but not limited to all cash deposited in Neoplan's bank accounts, all of Neoplan's equipment, raw materials, inventory, finished goods and the proceeds of such collateral." BNY Motion for Funds, ¶5. BNY argues further that the Lenders have perfected their security interest in Neoplan's bank accounts at U.S. Bank and the

3

First National Bank of Lamar through pledge agreements which grant BNY as agent for the lenders control over Neoplan's accounts at those banks. Id., ¶¶7-8. See sections 4-9-104 and 4-9-314, C.R.S. (stating that a security interest in deposit accounts is perfected by control of those accounts through an authenticated record that the bank will comply with instructions by the secured party directing disposition of the funds without further consent by the debtor). BNY also argues that the Lenders have perfected their security interest in the collateral for the loan and the proceeds of the collateral by filing a UCC-1 Financing Statement with the Colorado Secretary of State. BNY Motion for Funds, ¶¶10-11. See section 4-9-315, C.R.S. (providing that a security interest attaches to identifiable proceeds of collateral), and section 4-9-501, C.R.S. (providing that a security interest is perfected by filing a financing statement in the office of the secretary of state).

II.

The BNY Motion for Funds is supported by the Declaration of Francis B. Casanova II (the "Casanova Decl."), which establishes the following facts:

1. BNY serves as the agent for the Lenders, Casanova Decl. at ¶3;

2. The Lenders have advanced in excess of $17 million to Neoplan, id.;

3. Neoplan granted the Lenders a blanket security interest in all of Neoplan's assets, including but not limited to all cash deposited in Neoplan's bank accounts, id. at ¶4;

4. To perfect the Lenders' security interest in any cash located in Neoplan's bank accounts, the parties entered into pledge deposit account agreements with each bank, which gave BNY control over the deposited funds and which required the banks to comply with instructions by BNY directing disposition of the funds without further consent by Neoplan. Id. at ¶¶5-7. The

pledge agreement with U.S. Bank was entered into as of July 31, 2003, and specifically identifies Account No. 103673713337 as being subject to the pledge agreement. Id. at ¶6. The pledge agreements with the First National Bank of Lamar were entered into as of August 7, 2003, and specifically apply to Accounts No. 703-540 and 706-582, id. at ¶7;

5. To further perfect the security intrest, the Lenders filed a UCC-1 Financing Statement with the Colorado secretary of state. Id. at ¶8. The UCC-1 Financing Statement was filed on August 29, 2003, id. at Exh.E;

6. As of January 11, 2006, the outstanding balance owed by Neoplan to the Lenders was approximately $16.5 million, id. at ¶9; and

7. Neoplan does not maintain "sweep accounts" at U.S. Bank in the form described by Goodwill in its Traverse. To the contrary:

> Although Neoplan has several other accounts with U.S. Bank [in addition to Account No. 103673713337], including certain payroll, benefits, cafeteria plan, and shipping and receiving accounts, each of these accounts maintains a zero balance and is funded solely by the Deposit Account [Account No. 103673713337]. When Neoplan writes a check on one of its zero balance accounts, the precise funds needed to cover the check are automatically transferred to that account from the Deposit Account. Consistent with this practice, on the day the Garnishment was served, Neoplan had zero balance in each of its zero balance accounts. All funds of Neoplan held at U.S. Bank were contained in the Deposit Account.
>
> Neoplan also has an investment account known as the U.S. Bank Eurodollar Sweep account ("Investment Account"), which earns interest at a higher rate than the Deposit Account. Each day at approximately midnight, after the close of bank business, the balance of the Deposit Account is deposited into the Investment Account where it earns the higher rate of interest through the next morning. Prior to opening of business, all of the funds in the Investment Account are then deposited into the Deposit Account.

BNY Motion for Funds, Exh.4 ("Cashion Decl.") at ¶¶6-7.

The following facts also are undisputed:

8. Goodwill obtained a judgment against Neoplan in the amount of $134,730 plus interest on September 23, 2004. [Doc. # 12, filed 9/23/04.]

9. Goodwill served a writ of garnishment on U.S. Bank on October 27, 2004. [Doc. # 13, filed 10/29/04.]

10. Goodwill served a writ of garnishment on the First National Bank of Lamar on November 10, 2004. [Doc. # 22, filed 11/19/04.]

III.

BNY's security interest in the three bank accounts at issue were perfected by at least August 29, 2003. Goodwill by contrast, became a lien creditor only upon the service of its writs of garnishment on U.S. Bank and the First National Bank of Lamar, which happened on October 27, 2004, at the earliest. "As between a prior perfected security interest and a lien creditor, the prior perfected security interest is superior." Bowlen v. Federal Deposit Ins. Corp., 815 P.2d 1013, 1015 (Colo. App. 1991); 13 Colo. Prac., Civil Procedure Forms & Commentary § 103.83 (Feb. 16, 2006). Consequently, BNY's interest in the garnished accounts is superior to Goodwill's interest.

Nor am I persuaded by Goodwill's argument concerning sweep accounts. First, there is no evidence to support Goodwill's theory that Neoplan funds were held in collection accounts and then swept into a constantly overdrawn general account at the end of the day. The evidence, in fact, is to the contrary--that money was maintained in the Deposit Account and swept into

6

operating accounts as needed to cover withdrawals.  Cashion Decl. at ¶6.  I am persuaded by the following argument by BNY:

> Goodwill, KFT is mistaken that Neoplan has accounts with U.S. Bank into which outside deposits are made and then swept into account number 103673713337.  The reverse [is] true.  Neoplan has several accounts, including certain payroll, benefits, cafeteria plan, and shipping and receiving accounts, that each maintain a zero balance. . . .  These additional accounts are funded solely by account number 103673713337. . . .  When Neoplan writes a check on one of its zero balance accounts, the precise funds needed to cover the check are automatically transferred to that account from account number 103673713337. . . .  The zero balance accounts, therefore, never have any funds on deposit.

BNY Motion for Funds at ¶18.

The zero balance accounts maintained by Neoplan at U.S. Bank are thus factually distinguishable from the sweep accounts described in McMahan & Co. v. Po Folks, Inc., 206 F.2d at 629, for the reasons described by BNY in its motion.  BNY Motion for Funds at ¶¶22-27.

IV.

I respectfully RECOMMEND that Goodwill's Traverse be DENIED and that the BNY Motion for Funds be GRANTED insofar as it seeks an order directing the Clerk of the Court to return the funds deposited into the Court registry to the First National Bank of Lamar to be redeposited into Neoplan's accounts there.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In

re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 16, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge